# SUPREME COURT OF THE UNITED STATES

JEFFERSON S. DUNN, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS *v.*
MATTHEW REEVES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 20–1084.   Decided July 2, 2021

PER CURIAM.

Willie Johnson towed Matthew Reeves' broken-down car back to the city after finding Reeves stranded on an Alabama dirt road. In payment for this act of kindness, Reeves murdered Johnson, stole his money, and mocked his dying spasms. Years after being convicted of murder and sentenced to death, Reeves sought state postconviction relief, arguing that his trial counsel should have hired an expert to develop sentencing-phase mitigation evidence of intellectual disability. But despite having the burden to rebut the strong presumption that his attorneys made a legitimate strategic choice, Reeves did not call *any* of them to testify. The Alabama Court of Criminal Appeals denied relief, stressing that lack of evidence about counsel's decisions impeded Reeves' efforts to prove that they acted unreasonably. *Reeves* v. *State*, 226 So. 3d 711, 750–751 (2016).

On federal habeas review, the Eleventh Circuit held that this analysis was not only wrong, but indefensible. In an unpublished, *per curiam* opinion that drew heavily on a dissent from denial of certiorari, the Eleventh Circuit reinterpreted the Alabama court's lengthy opinion as imposing a simple *per se* prohibition on relief in all cases where a prisoner fails to question his counsel. *Reeves* v. *Commissioner, Ala. Dept. of Corrections*, 836 Fed. Appx. 733, 744–747 (2020). It was the Eleventh Circuit, however, that went astray in its "readiness to attribute error." *Woodford* v. *Visciotti*, 537 U. S. 19, 24 (2002) (*per curiam*). Federal habeas

courts must defer to reasonable state-court decisions, 28
U. S. C. §2254(d), and the Alabama court's treatment of the
spotty record in this case was consistent with this Court's
recognition that "the absence of evidence cannot overcome
the strong presumption that counsel's conduct fell within
the wide range of reasonable professional assistance." *Burt*
v. *Titlow*, 571 U. S. 12, 23 (2013) (internal quotation marks
and brackets omitted).

I

In November 1996, Reeves and some friends decided to
"go out looking for some robberies." *Reeves*, 226 So. 3d, at
719 (internal quotation marks omitted). The group's initial
target was a drug dealer in a nearby town, but their car
broke down and left them stranded on the side of the road.
A few hours later, however, Johnson happened to drive by
in his truck and offered to tow the disabled vehicle to
Reeves' house.

After they arrived, Reeves, who was riding in the bed of
the truck, stuck a shotgun through the rear window of the
cab and shot Johnson in the neck. As Johnson sat slumped
in the driver's seat "bleeding heavily and making gagging
noises," Reeves directed the rest of the group to "go through
Johnson's pockets to get his money." *Id.*, at 720 (internal
quotation marks omitted). Throughout the rest of the day,
Reeves repeatedly "brag[ged] about having shot Johnson,"
boasting that the murder "would earn him a 'teardrop,' a
gang tattoo acquired for killing someone." *Ibid.* (internal
quotation marks omitted). And at a party that night,
Reeves invented a dance in which he "pretend[ed] to pump
a shotgun" and "jerk[ed] his body around in a manner mock-
ing the way that Willie Johnson had died." *Ibid.* (brackets
and internal quotation marks omitted).

Alabama charged Reeves with murder and appointed
counsel for him. His attorneys took several steps to develop
mitigating evidence, including exploring the possibility that

Reeves was intellectually disabled. For example, they obtained extensive records of Reeves' educational, medical, and correctional history. Counsel also requested funding to hire a neuropsychologist, Dr. John Goff, to evaluate Reeves and prepare mitigation evidence. And when the trial court initially rejected that request, counsel successfully sought reconsideration.

After the court granted funding, Reeves' attorneys managed to acquire additional mental-health records from the State, including documents related to a pretrial competency evaluation that featured a partial administration of an IQ test.[1] The totality of the evidence reflected that Reeves had a troubled childhood, suffered from numerous behavioral difficulties, and was within the "borderline" range of intelligence. While in school—before being expelled for violence and misbehavior—he had been referred to special services for emotional conflict and behavioral issues. But Reeves' records also showed that he had previously been *denied* special educational services for intellectual disability. Counsel also learned that Reeves had attended classes and earned certificates in welding, masonry, and automotive mechanics. And the psychologist who initially evaluated Reeves later opined that he was not intellectually disabled.

At some point before trial, Reeves' attorneys apparently elected to pursue other mitigation strategies instead of hiring Dr. Goff. The record does not reveal the exact reason for this decision—likely because Reeves did not ask them to testify. The record does show, however, that counsel presented a holistic mitigation case. For example, counsel called several witnesses at sentencing—including Reeves' mother and the psychologist who performed the competency

---

[1] Around the same time, one of Reeves' attorneys withdrew from the case, explaining that Reeves "ha[d] been combative, argumentative[,] and ha[d] totally refused to assist [the attorney] in any manner." Electronic Case Filing in No. 1:17–cv–00061 (SD Ala.) (ECF), Doc. 23–1, pp. 3, 78. Another attorney replaced him.

evaluation—and elicited testimony about Reeves' turbulent childhood, neglectful family, and educational difficulties. The jury, however, recommended a death sentence.

Reeves later sought postconviction relief in state court, alleging almost 20 theories of error. Relevant here, he asserted that he was categorically exempt from execution by reason of intellectual disability, see *Atkins* v. *Virginia*, 536 U. S. 304 (2002), or at the very least that counsel should have hired Dr. Goff to develop mitigation along those lines for use at sentencing, see *Porter* v. *McCollum*, 558 U. S. 30 (2009) (*per curiam*). At a 2-day hearing in state court, Reeves called two experts, including Dr. Goff. The doctor concluded that Reeves was intellectually disabled, explaining that the so-called Flynn Effect—a controversial theory involving the inflation of IQ scores over time—required adjusting Reeves' score downward into the 60s.[2] Dr. Goff also cited a number of behavioral assessments that supposedly showed Reeves' shortcomings in adaptive functioning. For its part, the State offered the expert testimony of Dr. King, who administered his own evaluation and concluded that Reeves was not intellectually disabled. In fact, Dr. King pointed out that Reeves had a leadership role in a drug-dealing group and earned as much as $2,000 a week.

Despite Reeves' focus on his attorney's performance, he did not give them the opportunity to explain their actions. Although all three of his lawyers apparently were alive and available, Reeves did not call them to testify.

The trial court denied relief, and the Alabama Court of Criminal Appeals affirmed. First, it agreed that Reeves

---

[2] According to some proponents of this theory, the Flynn Effect posits that IQ scores increase "by approximately 0.3 points per year," which in turn "requires that the IQ test be 'normed' periodically so that the mean score on the test stays the same" and "that 0.3 points be deducted from [a] full-scale IQ score achieved on an IQ test for each year since the test was last normed." *Reeves* v. *State*, 226 So. 3d 711, 730 (Ala. Crim. App. 2016).

had failed to prove that he was actually intellectually disabled and thus exempt from execution. *Reeves*, 226 So. 3d, at 744. The court specifically addressed Dr. Goff's reliance on the Flynn Effect, reiterating that this approach "has not been accepted as scientifically valid by all courts" and was "not settled in the psychological community." *Id.*, at 739 (internal quotation marks omitted). In fact, even Dr. Goff had "admitted that he did not use the 'Flynn Effect' for over 20 years after it was first discovered." *Ibid.*

Second, the court rejected Reeves' claim that counsel should have hired an expert to develop mitigating evidence of intellectual disability. Stressing that an attorney's decision not to hire an expert is "typically [a] strategic decisio[n]" that will "not constitute per se deficient performance," the court looked to the record to assess the "reasoning behind counsel's actions." *Id.*, at 750, 751 (internal quotation marks omitted). In this case, the court observed, "the record [was] silent as to th[ose] reasons" "because Reeves failed to call his counsel to testify." *Id.*, at 751 (internal quotation marks omitted). Hence, he could not overcome the "presumption of effectiveness" that courts must afford to trial counsel. *Ibid.* (internal quotation marks omitted).

Reeves sought certiorari, which we denied over a dissent. *Reeves* v. *Alabama*, 583 U. S. ___ (2017) (opinion of SOTOMAYOR, J.). The dissent acknowledged that the "absence of counsel's testimony may make it more difficult for a defendant to meet his burden" of proving deficient performance, but still would have reversed and remanded because it understood the Alabama court to have applied "a categorical rule that counsel must testify in order for a petitioner to succeed on a federal constitutional ineffective-assistance-of-counsel claim." *Id.*, at ___, ___ (slip op., at 2, 9). Although the dissent cited no decision in which this Court reprimanded a state court for taking that approach, it reasoned that such a rule was contrary to decisions in

which this Court had "found deficient performance *despite*
[attorney] testimony, based on a review of the full record."
*Id.*, at ___ (slip op., at 9).[3]

Reeves next sought federal habeas review. The District
Court denied relief, but the Eleventh Circuit reversed in
part. Like every court before it, the Eleventh Circuit first
rejected Reeves' claim that he was intellectually disabled.
836 Fed. Appx., at 741. But, it held that his lawyers were
constitutionally deficient for not developing more evidence
of intellectual disability and that this failure might have
changed the outcome of the trial.

In reaching that result, the Eleventh Circuit explained
that it owed no deference to the "unreasonable" decision of
the Alabama court. §2254(d). Quoting at length from the
earlier dissent from denial of certiorari, the panel reasoned
that "a *per se* rule that the petitioner must present counsel's
testimony" was clearly contrary to federal law. *Id.*, at 744–
747. And, to demonstrate that the Alabama court had ap-
plied such a rule, the Eleventh Circuit excised a single
statement from a lengthy block quote: "'[T]o overcome the
strong presumption of effectiveness, a [state] petitioner
must, at his evidentiary hearing, question trial counsel re-
garding his actions and reasoning.'" *Id.*, at 744 (emphasis
deleted). The Eleventh Circuit then reasoned that the state
court surely must have imposed this "categorical rule" be-
cause its opinion also said that Reeves' "'failure to call his
attorneys to testify was fatal to his claims.'" *Ibid.* (empha-
sis deleted; brackets omitted). But that quote was not quite
complete; the original sentence reads, "*In this case*, Reeves's

––––––––––
[3] We note that this dissent—unlike the Eleventh Circuit—considered
the case before it entered the exceedingly deferential posture of federal
habeas review. Moreover, the dissent did *not* conclude that Reeves was
entitled to relief on the merits of his claim, but instead would have "re-
mand[ed] so that the [Alabama court] could explain why, given the full
factual record, Reeves' counsel's choices constituted reasonable perfor-
mance." 583 U. S., at ___ (slip op., at 14).

failure to call his attorneys to testify is fatal to his claims of ineffective assistance of counsel." *Reeves*, 226 So. 3d, at 749 (emphasis added).

## II

This case presents a simple question: Did the Alabama court violate clearly established federal law when it rejected Reeves' claim that his attorneys should have hired an expert?

In answering this question, we owe deference to both Reeves' counsel *and* the state court. As to counsel, we have often explained that strategic decisions—including whether to hire an expert—are entitled to a "strong presumption" of reasonableness. *Harrington* v. *Richter*, 562 U. S. 86, 104 (2011). Defense lawyers have "limited" time and resources, and so must choose from among "'countless'" strategic options. *Id.*, at 106–107. Such decisions are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues. *Id.*, at 108.

The burden of rebutting this presumption "rests squarely on the defendant," and "[i]t should go without saying that the absence of evidence cannot overcome [it]." *Titlow*, 571 U. S., at 22–23. In fact, even if there is reason to think that counsel's conduct "was far from exemplary," a court still may not grant relief if "[t]he record does not reveal" that counsel took an approach that no competent lawyer would have chosen. *Id.*, at 23–24.

This analysis is "doubly deferential" when, as here, a state court has decided that counsel performed adequately. *Id.*, at 15 (internal quotation marks omitted); see also *Sexton* v. *Beaudreaux*, 585 U. S. \_\_\_, \_\_\_–\_\_\_ (2018) (*per curiam*) (slip op., at 7–8) (deference is "near its apex" in such cases). A federal court may grant habeas relief only if a state court violated "*clearly established* Federal law, as determined by *the Supreme Court* of the United States."

§2254(d)(1) (emphasis added). This "wide latitude" means that federal courts can correct only "extreme malfunctions in the state criminal justice syste[m]." *Richter*, 562 U. S., at 102, 106 (internal quotation marks omitted). And in reviewing the work of their peers, federal judges must begin with the "presumption that state courts know and follow the law." *Woodford*, 537 U. S., at 24. Or, in more concrete terms, a federal court may grant relief only if *every* "'fairminded juris[t]'" would agree that *every* reasonable lawyer would have made a different decision. *Richter*, 562 U. S., at 101.

A straightforward application of these principles reveals the extent of the Eleventh Circuit's error. We start, as we must, with the case as it came to the Alabama court. Reeves had filed a 100-plus-page brief alleging manifold errors, including several theories of ineffective assistance of counsel. *Reeves*, 226 So. 3d, at 749–750, and n. 16. Many of these attacked basic strategic choices, including his current argument that counsel should have hired Dr. Goff to develop additional evidence of intellectual disability. Yet, despite Reeves' determination to find fault with his lawyers, he offered no testimony or other evidence from them.

That omission was particularly significant given the "range of possible reasons [Reeves'] counsel may have had for proceeding as they did." *Cullen* v. *Pinholster*, 563 U. S. 170, 196 (2011) (internal quotation marks omitted). This is not a case in which a lawyer "failed to uncover and present *any* evidence of [Reeves'] mental health or mental impairment, [or] his family background." *Porter*, 558 U. S., at 40 (emphasis added). Counsel's initial enthusiasm to collect Reeves' records and obtain funding hardly indicates professional neglect and disinterest.

Rather, we simply do not know what information and considerations emerged as counsel reviewed the case and refined their strategy. The attorneys may very well have pored over the voluminous evidence in their possession—

including those obtained *after* their funding request—and identified several reasons that a jury was unlikely to be persuaded by a claim of intellectual disability. After all, although Reeves' records suggested that his intelligence was below average, they also indicated that he was not intellectually disabled. *E.g.*, 226 So. 3d, at 729. Counsel might also have been concerned about the evidence of Reeves' history of violence, criminal past, and behavior problems, *ibid.*, and concluded that presenting these characteristics alongside a full-throated intellectual-disability argument would have convinced the jury that Reeves "was simply beyond rehabilitation," *Pinholster*, 563 U. S., at 201. Or, counsel may have uncovered additional evidence confirming their concerns about an intellectual-disability strategy. Perhaps Reeves informed them, as he later did Dr. King, that he was savvy enough to earn thousands of dollars a week in a drug-dealing operation where he had a leadership role. 226 So. 3d, at 736.

Or, counsel may well have further investigated Dr. Goff and decided that his debatable methodologies would undermine credibility with a local jury—possibly a prescient choice given that *every single court* to consider the issue has rejected Reeves' claim of intellectual disability. In fact, around the time that counsel were formulating their trial strategy, Dr. Goff was already performing questionable evaluations. See, *e.g.*, *King* v. *Apfel*, 2000 WL 284217, *2 (SD Ala., Feb. 29, 2000) (Dr. Goff's 1996 evaluation of a Social Security claimant was "unsupported by the medical evidence," and "*everything else* in the record [was] counter to [his] extreme findings" (emphasis added)); *Small* v. *Apfel*, 2000 WL 1844727, *3, n. 5 (SD Ala., Oct. 17, 2000) ("[Dr.] Goff's [1998] conclusions regarding deficits in adaptive behavior are not only mere guesses . . . but also suffer from a lack of support in the record"). It is not unreasonable for a lawyer to be concerned about overreaching.

Simply put, if the attorneys had been given the chance to

testify, they might have pointed to information justifying the strategic decision to devote their time and efforts elsewhere. Yet, Reeves—possibly pursuing a strategy of his own—declined to put that testimonial evidence before the Alabama court. So given that the Alabama court was entitled to reject Reeves' claim if trial counsel had any "possible reaso[n] . . . for proceeding as they did," *Pinholster*, 563 U. S., at 196 (internal quotation marks omitted), it surely was not obliged to accept Reeves' blanket assertion on an incomplete evidentiary record that "[n]o reasonable strategy could support counsel's failure," ECF Doc. 23–29, at 81.

Rather than defer to this commonsense analysis, the Eleventh Circuit took a path that we have long foreclosed: "mischaracterization of the state-court opinion." *Woodford*, 537 U. S., at 22. As explained above, the Alabama court reasonably concluded that the incomplete evidentiary record—which was notably "silent as to the reasons trial counsel . . . chose not to hire Dr. Goff or another neuropsychologist"—doomed Reeves' belated efforts to second-guess his attorneys. *Reeves*, 226 So. 3d, at 751. The Eleventh Circuit, however, recharacterized this case-specific analysis as a "categorical rule" that *any* prisoner will *always* lose if he fails to call and question "trial counsel regarding his or her actions and reasoning." 836 Fed. Appx., at 744 (emphasis deleted; internal quotation marks omitted).

We think it clear from context that the Alabama court did not apply a blanket rule, but rather determined that the facts of this case did not merit relief. As an initial matter, the Alabama court twice recognized that there *can* be instances of "*per se* deficient performance." *Reeves*, 226 So. 3d, at 750–751. It simply concluded that here, counsel's choice regarding experts involved a strategic decision entitled to a presumption of reasonableness. *Ibid.* Moreover, *other* portions of the opinion's lengthy recitation of the law (which the Eleventh Circuit omitted) belie a categorical approach. In particular, the court twice said that it would

consider "'all the circumstances'" of the case, and it quali-
fied its supposedly categorical rule by explaining that
"counsel should *ordinarily* be afforded an opportunity to ex-
plain his actions before being denounced as ineffective." *Id.*,
at 744, 747 (emphasis added; some internal quotation
marks omitted).

Other parts of the opinion yield the same interpretation.
For example, the court devoted almost nine pages to dis-
cussing ineffective assistance of counsel. That would have
been a curious choice for a "busy state cour[t]" if a single
sentence applying a *per se* rule could have sufficed. *John-
son* v. *Williams*, 568 U. S. 289, 298 (2013) (state courts need
not even "discuss separately every single claim"). Within
that lengthy discussion, the court individually mentioned
many of Reeves' specific theories, including his current
intellectual-disability argument. Moreover, that the court
in a footnote summarily rejected *different* ineffective-
assistance-of-counsel claims for procedural reasons further
weighs against imputing a *per se* rule for the theories that
the court discussed in the body of its opinion. *Reeves*, 226
So. 3d, at 749–750, n. 16.

Even more important, the actual analysis of the claim at
issue here reflects a case-specific approach. The court did
not merely say, as the Eleventh Circuit wrongly suggested,
that Reeves' "'failure to call his attorneys to testify was fa-
tal to his claims.'" 836 Fed. Appx., at 744 (brackets omit-
ted). Rather, the opinion prefaced this quote with an im-
portant qualifier—"*In this case*." *Reeves*, 226 So. 3d, at 749
(emphasis added). And sure enough, the court proceeded to
explain why Reeves could not prevail "in this case"—be-
cause "the record [was] silent as to the reasoning behind
counsel's actions." *Id.*, at 751 (internal quotation marks
omitted). To be sure, the record in this particular case hap-
pened to be deficient "because Reeves failed to call his coun-
sel to testify." *Ibid.* But, this unremarkable observation of
cause and effect in light of the facts before the court was

hardly an absolute bar in *every* case where *other* record evidence might fill in the details. And, it certainly was not contrary to clearly established law given that this Court and the Eleventh Circuit have made the same observation that a silent record cannot discharge a prisoner's burden. *E.g.*, *Titlow*, 571 U. S., at 15, 22–24; *Grayson* v. *Thompson*, 257 F. 3d 1194, 1218 (CA11 2001) (noting that "the record [was] silent as to why trial counsel did not pursue a motion to suppress the evidence," and that "habeas counsel did not inquire as to trial counsel's reasons for not raising such a claim").[4]

\*   \*   \*

For the foregoing reasons, we grant the petition for a writ of certiorari, reverse the judgment of the Court of Appeals, and remand the case for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER dissents.

———————

[4] Today's dissent suggests that a more recent decision—*State* v. *M.D.D.*, ___ So. 3d ___, 2020 WL 6110694 (Ala. Crim. App., Oct. 16, 2020)—illustrates that Alabama courts understand *Reeves* to announce a *per se* rule. *Post*, at 6–9, and n. 4 (opinion of SOTOMAYOR, J.). But that case does the exact opposite. In *M.D.D.*, the petitioner alleged that his attorney should have called a medical expert at trial, yet he did not have the attorney testify at the postconviction hearing. 2020 WL 6110694, \*5–\*6. The Alabama court denied relief after examining the evidence and identifying a "sound, strategic reason for not calling [the expert] to testify." *Id.*, at \*8 (discussing a possible downside to having the expert testify); see also *id.*, at \*9 (explaining, in the alternative, why the petitioner suffered no prejudice). Notably, the court did so after citing *Reeves* and quoting the *same language* that the dissent claims represents a *per se* rule. Compare *id.*, at \*7–\*8 ("[A] Rule 32 petitioner must, at his evidentiary hearing, question trial counsel regarding his or her actions and reasoning. . . . In this case, the failure to have trial counsel testify is fatal to [the petitioner's] claims of ineffective assistance of counsel" (emphasis deleted; internal quotation marks omitted)), with *post*, at 1, 5. Again, it would have been strange for a busy Alabama court to devote pages to rejecting a claim if a categorical bar would have sufficed.

# SUPREME COURT OF THE UNITED STATES

JEFFERSON S. DUNN, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS *v.*
MATTHEW REEVES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 20–1084.   Decided July 2, 2021

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN joins,
dissenting.

Under *Strickland* v. *Washington*, 466 U. S. 668 (1984),
courts must assess a defendant's claim that his attorney
failed to provide constitutionally effective assistance "in
light of all the circumstances." *Id.*, at 690. No single type
of evidence is a prerequisite to relief. Therefore, as the ma-
jority implicitly acknowledges, a *per se* rule that a habeas
petitioner's claim fails if his attorney did not testify at an
evidentiary hearing is flatly incompatible with *Strickland.*

The Court of Criminal Appeals of Alabama applied pre-
cisely such a rule in this case. When respondent Matthew
Reeves raised several ineffective-assistance-of-counsel
(IAC) claims in state postconviction proceedings, the court
stated, in no uncertain terms (and underlined for empha-
sis), that "to overcome the strong presumption of effective-
ness, <u>a Rule 32 petitioner must, at his evidentiary hearing,
question trial counsel regarding his or her actions and rea-
soning</u>." *Reeves* v. *State*, 226 So. 3d 711, 748 (2016) (inter-
nal quotation marks omitted). Applying that rule "[i]n this
case," the court held that "Reeves's failure to call his attor-
neys to testify is fatal to his claims of ineffective assistance
of counsel." *Id.*, at 749. Reeves then sought habeas relief
in federal court. Based on the state court's clear holding,
the Court of Appeals for the Eleventh Circuit properly de-
termined that the state court's use of the *per se* rule was an

unreasonable application of *Strickland. Reeves* v. *Commissioner*, *Ala. Dept. of Corrections*, 836 Fed. Appx. 733, 744 (2020) (*per curiam*).

Through linguistic contortion, the Court today rescues the state court's decision by construing it not to apply a *per se* rule at all. Based on that implausible reading, the Court summarily reverses the Eleventh Circuit's grant of relief. The lengths to which this Court goes to ensure that Reeves remains on death row are extraordinary. I respectfully dissent.

## I

### A

In 1998, Reeves was convicted of capital murder for a brutal crime he committed when he was 18 years old. By a vote of 10 to 2, a divided jury recommended that Reeves be sentenced to death, and the trial court accepted that recommendation.

During his trial, Reeves was initially represented by two attorneys, Blanchard McLeod and Marvin Wiggins. Reeves' counsel moved for the appointment of a neuropsychologist, Dr. John Goff, to conduct an intellectual disability evaluation. When the motion was denied, Reeves' counsel sought rehearing. They explained that they had collected "hundreds of pages of psychological, psychometric and behavioral analysis material relating to [Reeves]." Electronic Case Filing in No. 1:17–cv–00061 (SD Ala.) (ECF), Doc. 23–1, p. 74. That material, McLeod had represented in court, was "exceptionally pertinent" to Reeves' penalty phase defense. ECF Doc. 23–3, at 96. Counsel stated that retaining "a clinical neuropsychologist" like Dr. Goff was "the only avenue open to the defense to compile this information . . . and present [it] in an orderly and informative fashion to the jury." ECF Doc. 23–1, at 74–75. The state court granted the request and provided funding to hire Dr. Goff. *Id.*, at

81. Around the same time, McLeod was replaced by another attorney, Thomas Goggans. 836 Fed. Appx., at 736.

Reeves' new team, Goggans and Wiggins, failed to follow through on hiring a neuropsychologist. As Dr. Goff later testified, in the more than three months between his appointment and the penalty phase trial, Reeves' attorneys "just never called." ECF Doc. 23–24, at 68. They also never hired any other neuropsychologist to review the evidence and evaluate Reeves for intellectual disability. 836 Fed. Appx., at 748. Instead, on the day of the penalty phase trial, counsel contacted Dr. Kathleen Ronan, a clinical psychologist who had previously evaluated Reeves for competence to stand trial and his mental state at the time of the offense. ECF Doc. 23–26, at 82–84. She had never evaluated Reeves for intellectual disability, and she had not spoken with Goggans or Wiggins until "the day that [she] testified." *Id.*, at 84.

Dr. Ronan informed Reeves' counsel that her prior evaluation would not serve their purposes. *Ibid.* As she later explained, assessing Reeves for intellectual disability "was not within the scope of [her] evaluation." *Ibid.* Had she been hired to conduct such an assessment, she would have administered a full IQ test and conducted other evaluations designed to diagnose intellectual disability. *Id.*, at 85–87. Instead, Dr. Ronan had only administered part of an IQ test and found that Reeves' verbal IQ "was not in a level that they would call him [intellectually disabled]." ECF Doc. 23–8, at 155; see also ECF Doc. 23–26, at 85. An expert for the State later administered a full IQ test, however, showing that Reeves' IQ was well within the range for intellectual disability. *Reeves*, 226 So. 3d, at 737; ECF Doc. 23–25, at 24; ECF Doc. 23–24, at 26.

Nevertheless, Reeves' counsel called Dr. Ronan to testify. The only other witnesses counsel called were Reeves' mother and a police detective. The entire penalty phase trial lasted just one and a half hours. ECF Doc. 23–14, at

154. Reviewing the record, the trial judge found that "[t]he only evidence that [he could] consider in mitigation of this offense . . . is the evidence of [Reeves'] age and [his] youthfulness." ECF Doc. 23–8, at 212. Concluding that such limited evidence would not outweigh the aggravating circumstances, the court sentenced Reeves to death. *Ibid.*

### B

In 2002, Reeves filed a motion for state postconviction relief under Alabama Rule of Criminal Procedure 32 (known as a Rule 32 petition). Reeves alleged that his trial counsel had been constitutionally ineffective in several ways, including by failing to hire a neuropsychologist to evaluate him for intellectual disability.

The state court held a 2-day evidentiary hearing on Reeves' claims. Reeves called Dr. Goff to testify. At the request of Reeves' postconviction counsel, Dr. Goff had reviewed Reeves' mental health and school records and administered "a battery of tests designed to assess Mr. Reeves' IQ, cognitive abilities, and adaptive functioning." 836 Fed. Appx., at 737. Dr. Goff found that Reeves' IQ scores were 71 and 73,[1] showing that Reeves "has significantly subaverage intellectual functioning," and that he "has significant deficits in multiple areas of adaptive functioning." *Ibid.* These deficits manifested before Reeves turned 18 years old. ECF Doc. 23–24, at 25–26, 65–67. Based on his findings, Dr. Goff concluded that Reeves is intellectually disabled. 836 Fed. Appx., at 737. Dr. Goff testified that "had Mr. Reeves' trial counsel asked him to evaluate Mr. Reeves years earlier for the purpose of testifying at trial, he would have performed similar evaluations and reached the same conclusions." *Ibid.*

--------

[1] Reeves' IQ scores were even lower after accounting for the Flynn Effect. ECF Doc. 23–24, at 43–46. Dr. Goff concluded that Reeves' IQ fell within the intellectual disability range even without such an adjustment. *Id.*, at 44, 99.

Reeves' trial counsel did not testify at the Rule 32 hearing. At the beginning of the hearing, the State had declared that it intended to call Goggans and Wiggins to "explain why they did certain things and maybe why they didn't do certain things." ECF Doc. 23–24, at 14. But at the conclusion of the hearing, the State "decided not to call trial counsel." ECF Doc. 23–25, at 86.

The state court denied Reeves' motion for postconviction relief. On appeal, Reeves argued that the lower court had "erred in ignoring substantial evidence in support of [his IAC claim] on the basis that he did not call counsel to testify." ECF Doc. 23–29, at 45. In response, the State argued that because "Reeves failed to call either of his trial attorneys to testify concerning their decision to call Dr. Ronan rather than Dr. Goff," the lower court "properly presumed that they acted reasonably." *Id.*, at 199–200.

The Court of Criminal Appeals of Alabama agreed with the State, rejecting Reeves' contention that "testimony from counsel is not necessary to prove any claim of ineffective assistance of counsel." *Reeves*, 226 So. 3d, at 747. That argument, the court reasoned, "fail[ed] to take into account the requirement that courts indulge a strong presumption that counsel acted reasonably, a presumption that must be overcome by <u>evidence</u> to the contrary." *Ibid.* (emphasis in original). The court then specified what that evidence must be: "'[T]o overcome the strong presumption of effectiveness, <u>a Rule 32 petitioner must, at his evidentiary hearing, question trial counsel regarding his or her actions and reasoning</u>.'" *Id.*, at 748 (emphasis in original; quoting *Stallworth* v. *State*, 171 So. 3d 53, 92 (Ala. Crim. App. 2013)). The court cited over half a dozen cases supporting that *per se* rule. See 226 So. 3d, at 748. It then applied the rule to Reeves, explaining that "[i]n this case, Reeves's failure to call his attorneys to testify is fatal to his claims of ineffective assistance of counsel." *Id.*, at 749.

Reeves filed a petition for a writ of certiorari seeking review of the state court's decision, which this Court denied. I dissented, joined by Justice Ginsburg and JUSTICE KAGAN. We pointed out that the state court had applied a *per se* rule "that counsel must testify in order for a petitioner to succeed on a federal constitutional ineffective-assistance-of-counsel claim." *Reeves* v. *Alabama*, 583 U. S. ___, ___ (2017) (slip op., at 2). Even the State did not defend the constitutionality of such a rule. See *ibid.*

## C

Reeves then filed a federal habeas petition pursuant to 28 U. S. C. §2254. The District Court denied Reeves' petition and his motion for reconsideration. See 2019 WL 1938805, *11 (SD Ala., May 1, 2019). The Eleventh Circuit reversed in relevant part. It read the state appellate court's decision to "trea[t] Mr. Reeves' failure to call his counsel to testify as a *per se* bar to relief—despite ample evidence in the record to overcome the presumption of adequate representation." 836 Fed. Appx., at 744. In so doing, the state court "unreasonably applied *Strickland*." *Ibid.* The Eleventh Circuit accordingly reviewed Reeves' claim *de novo* and found that Reeves had proved ineffective assistance of counsel. *Id.*, at 747–753.

The Eleventh Circuit was not alone in interpreting the state court's decision to apply a "categorical rule." *Id.*, at 744. Less than a month earlier, the Court of Criminal Appeals of Alabama (the same court that had issued the decision in question) denied another defendant's IAC claim. Once again, the court stated its *per se* rule: "[T]o overcome the strong presumption of effectiveness, a Rule 32 petitioner must, at his evidentiary hearing, question trial counsel regarding his or her actions and reasoning." *State* v. *M.D.D.*, ___ So. 3d ___, ___, 2020 WL 6110694, *7 (Oct. 16, 2020) (internal quotation marks omitted; emphasis deleted). In support, the court cited its prior decision in

*Reeves*, which it summarized as "holding that [a] Rule 32 petitioner had failed to prove his claims of ineffective assistance of trial and appellate counsel because he did not call his trial or appellate counsel to testify at the Rule 32 evidentiary hearing." *Id.*, at *8. As in Reeves' case, the court in *M.D.D.* held that "the failure to have trial counsel testify is fatal to M.D.D.'s claims of ineffective assistance of counsel." *Ibid.*[2]

The State petitioned this Court to review the Eleventh Circuit's decision in *Reeves*. Despite the Alabama court's plain embrace of a *per se* rule, the State accused the Eleventh Circuit of too "readily attributing error to the state court" by interpreting its decision to "purportedly creat[e] and us[e] this per se rule." Pet. for Cert. i. On that basis, the State asked this Court to reverse summarily the Eleventh Circuit. *Id.*, at 30.

## II

The sole question presented in this case is whether the Court of Criminal Appeals of Alabama applied a categorical rule that Reeves' failure to call his attorneys to testify was fatal to his IAC claim as a matter of law. No one disputes that such a rule would be an "unreasonable application" of *Strickland* and its progeny. 28 U. S. C. §2254(d)(1); see also *ante*, at 1, 10; Pet. for Cert. 1. Under those decisions, no single type of evidence, such as counsel's testimony, is a prerequisite to relief.[3] See *Roe* v. *Flores-Ortega*, 528 U. S.

_____

[2] The state court separately held that relief was not warranted because the court could conceive of a sound strategic reason for counsel's actions and because M.D.D. failed to show prejudice. See *State* v. *M.D.D.*, ___ So. 3d ___, ___–___, 2020 WL 6110694, *8–*9 (Ala. Crim. App., Oct. 16, 2020).

[3] As the Eleventh Circuit recognized, this Court has found deficient performance without any testimony from trial counsel. See *Reeves* v. *Commissioner, Ala. Dept. of Corrections*, 836 Fed. Appx. 733, 751 (2020) (*per curiam*) (discussing *Buck* v. *Davis*, 580 U. S. ___ (2017)). This Court

470, 478 (2000) (describing *Strickland*'s "circumstance-spe-
cific reasonableness inquiry"); *Williams* v. *Taylor*, 529 U. S.
362, 391 (2000) (explaining that "the *Strickland* test 'of ne-
cessity requires a case-by-case examination of the evi-
dence'").

The Court of Criminal Appeals improperly applied such
a *per se* rule here. It began by invoking Reeves' burden "to
present evidence" sufficient to overcome the "strong pre-
sumption that counsel acted reasonably." *Reeves*, 226 So.
3d, at 751 (emphasis deleted). It then ignored all of the ev-
idence that Reeves' counsel had acted unreasonably, includ-
ing Dr. Goff's description of the evaluation he would have
conducted, Dr. Ronan's warning that her testimony was no
substitute for an actual intellectual disability assessment,
and trial counsel's repeated representations about the ne-
cessity of hiring Dr. Goff to conduct such an evaluation.

The court held that none of this evidence mattered be-
cause trial counsel did not testify: "[B]ecause Reeves failed
to call his counsel to testify, the record is silent as to the
reasons trial counsel . . . chose not to hire Dr. Goff or an-
other neuropsychologist." *Ibid.* The court treated that fact
as "fatal" to Reeves' claim. *Id.*, at 749. Because Reeves
could not establish the subjective "reasoning behind coun-
sel's actions, the presumption of effectiveness [was] suffi-
cient to deny relief." *Id.*, at 751 (internal quotation marks
omitted); see also *M.D.D.*, ___ So. 3d, at ___, 2020 WL
6110694, *8 (explaining that the court denied Reeves relief
"because he did not call his trial . . . counsel to testify").[4]

———————
has also found deficient performance when counsel testified and "at-
tempt[ed] to justify their [actions] as reflecting a tactical judgment."
*Wiggins* v. *Smith*, 539 U. S. 510, 521 (2003).

[4] The Court has no answer to the explicit description in *M.D.D.* of the
state court's reasoning in *Reeves*. Instead, the Court collapses the state
court's alternative holdings in *M.D.D.*, conflating the state court's appli-
cation of the *per se* rule requiring counsel's testimony with the state
court's separate reasons for denying relief. *Ante,* at 12, n. 4. It is true,
as the Court notes, that the state court "examin[ed] the evidence and

## III

In reviewing habeas petitions, "federal judges must begin with the 'presumption that state courts know and follow the law.'" *Ante*, at 8 (quoting *Woodford* v. *Visciotti*, 537 U. S. 19, 24 (2002) (*per curiam*)). But when state courts contravene this Court's precedents, federal courts cannot turn a blind eye. Here, it is hard to see how the state court could have been any clearer in applying a *per se* rule that undisputedly violates *Strickland*.

## A

The Court declares that it is "clear from context that the Alabama court did not apply a blanket rule, but rather determined that the facts of this case did not merit relief." *Ante*, at 10. The problem is that the "facts of this case" make no appearance in the state court's discussion. See *Reeves*, 226 So. 3d, at 749–751. This Court thus searches for some sign (any sign) that the state court implicitly assessed the facts of the case.

The Court first points to two statements at the beginning

_____

identif[ied] a sound, strategic reason" for counsel's actions "after citing *Reeves* and quoting the *same language* that the dissent claims represents a *per se* rule." *Ibid.* (internal quotation marks omitted). What the Court fails to mention is that the state court first concluded that the *per se* rule applied in *Reeves* was sufficient, on its own, to deny relief. *M.D.D.*, \_\_\_ So. 3d, at \_\_\_, 2020 WL 6110694, *8 ("In this case, the failure to have trial counsel testify is fatal to M.D.D.'s claims of ineffective assistance of counsel," because "where the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief" (internal quotation marks omitted)). Only after announcing this holding did the state court separately offer two additional, independent reasons for denying relief, explaining that "[f]urther," there was a "sound, strategic reason" for counsel's actions, and "[m]ore[o]ver," an examination of the record showed that M.D.D. had failed to demonstrate prejudice. *Id.,* at *8–*9. Contrary to the Court's suggestion, these alternative holdings formed no part of the state court's discussion of *Reeves* or application of the *per se* rule. The Court rewrites yet another state-court decision in service of its efforts to rewrite this one.

of the state court's analysis in which it "said that it would consider 'all the circumstances' of the case." *Ante*, at 10–11. But after perfunctorily citing the *Strickland* standard, the state court never actually followed through on its obligation to consider the evidence. Its analysis began and ended with counsel's failure to testify. See *Reeves*, 226 So. 3d, at 750–751. State courts cannot insulate their decisions from scrutiny by quoting the proper standard and then ignoring it.

In a similar vein, this Court seizes upon the state court's quotation from an earlier case stating that trial "'counsel should *ordinarily* be afforded an opportunity to explain his actions before being denounced as ineffective.'" *Ante*, at 11. This, the Court claims, "belie[s] a categorical approach." *Ante*, at 10. The state court, however, expressly overrode that formulation of the rule, stating that the court "[s]ubsequently" held that IAC petitioners "'<u>must</u>'" question trial counsel. *Reeves*, 226 So. 3d, at 747–748 (emphasis in original). It relied on that rule to reject Reeves' claim. *Id.*, at 748–749.

The Court also cites the length of the state court's opinion as purported proof that the court conducted a fact-specific inquiry. *Ante*, at 11. But what matters is the state court's reasoning, not the length of its opinion. The state court did not spend "almost nine pages" conducting a detailed "case-specific" analysis. *Ibid.* The vast majority of the state court's discussion instead consists of a list of Reeves' IAC allegations and lengthy block quotes of general legal standards. See *Reeves*, 226 So. 3d, at 744–750. When the court finally turned to the facts of this case, it explicitly barred relief only "because Reeves failed to call his counsel to testify." *Id.*, at 751.

Finally, the Court latches on to three words, "[i]n this case," insisting that they prove that the state court merely concluded that trial counsel's testimony was critical to Reeves' IAC claim "[i]n this case." *Ante*, at 11 (quoting 226 So. 3d, at 749; emphasis deleted). But in using the phrase

"[i]n this case," the state court was not addressing the evidentiary record. It was analogizing Reeves' case to the many cases it had just cited for the proposition that "'<u>a Rule 32 petitioner must, at his evidentiary hearing, question trial counsel regarding his or her actions and reasoning.</u>'" *Id.*, at 748–749 (emphasis in original). It then concluded that "Reeves's failure to call his attorneys to testify" in this case was similarly "fatal to his claims." *Id.*, at 749. If the state court had meant to weigh the evidence in the record, it would have. It did not. This Court is putting words in the state court's mouth that the state court never uttered, and which are flatly inconsistent with what the state court did say.

B

Finding no relevant factual analysis in the state court's decision, this Court attempts its own, speculating as to what Reeves' counsel might have said had they been called to testify. See *ante*, at 8–10. For instance, the Court imagines that "counsel may have uncovered additional evidence confirming their concerns about an intellectual-disability strategy." *Ante*, at 9.[5] The Court also insinuates that

––––––––––

[5] The Court hypothesizes that "[t]he attorneys may very well have pored over the voluminous evidence in their possession—including those obtained *after* their funding request—and identified several reasons that a jury was unlikely to be persuaded [by] a claim of intellectual disability." *Ante*, at 8–9 (noting evidence indicating that Reeves' "intelligence was below average," but he was not intellectually disabled, and Reeves' "history of violence, criminal past, and behavior problems"). But counsel already knew of these concerns when they moved for Dr. Goff's appointment. For instance, several months before counsel filed their initial motion, they received a report from Dr. Ronan's guilt-phase evaluation detailing these issues. See ECF Doc. 23–13, at 61–63, 65. It is hard to see how counsel's later request for the records underlying that evaluation could have significantly changed their calculus. See *ante*, at 3; ECF Doc. 23–1, at 88. Moreover, even if counsel had discovered additional evidence related to Reeves' intellectual disability, there would still be a need for an expert to evaluate the evidence in its totality. Indeed, Reeves'

Reeves may have strategically declined to call his trial counsel to avoid harmful testimony. *Ante*, at 10. But if counsel's testimony would have been damaging to Reeves' claim, one would have expected the State to call counsel to testify. Yet the State expressly declined to do so, despite having counsel available to testify. See ECF Doc. 23–25, at 85–86.

The Court's eagerness to invent scenarios harmful to Reeves' claim stems from its apparent belief that "the Alabama court was entitled to reject Reeves' claim if trial counsel had any 'possible reaso[n] . . . for proceeding as they did.'" *Ante*, at 10 (quoting *Cullen* v. *Pinholster*, 563 U. S. 170, 196 (2011)). That view has no basis in this Court's precedent. *Cullen* did not hold that an IAC claim fails if a court can imagine any possible reason for counsel's actions. No claim could ever survive such a standard. One can always imagine some unsubstantiated reason for what trial counsel did. *Cullen* instead stated that, to assess whether counsel's conduct was reasonable, courts must "entertain the range of possible reasons" for counsel's actions in light of the events and evidence actually established in the record. *Id.*, at 196 (internal quotation marks omitted). The Court's speculations about what may have occurred after Dr. Goff's appointment are pure conjecture.

In any case, the Court's guesswork is beside the point because it was not the basis for the state court's decision. When a state court gives a reasoned explanation for its decision, federal habeas courts must review that decision on its own terms. See *Wilson* v. *Sellers*, 584 U. S. ___, ___ (2018) (slip op., at 2) ("In that case, a federal habeas court

---

counsel argued to the state court that, given the volume of evidence, they needed the assistance of a qualified expert to properly "compile" and "correlate" the information and evaluate Reeves. *Id.*, at 74–75; see ECF Doc. 23–3, at 91 (counsel arguing that they required Dr. Goff's assistance because "the amount of material that we have received through discovery . . . is beyond our ability to deal with").

simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable"). Here, the state court relied solely on the mere fact that Reeves' counsel did not testify. That is the only reason subject to our review, and it plainly contravenes *Strickland*.

Even as the Court attempts to save the state court's decision, it erroneously embraces the state court's flawed assumption that IAC claims require direct evidence of the subjective "'reasoning behind counsel's actions.'" See *ante*, at 11. "*Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington* v. *Richter*, 562 U. S. 86, 110 (2011). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U. S., at 690. This inquiry must be conducted "[e]ven assuming" that counsel acted "for strategic reasons," *Wiggins* v. *Smith*, 539 U. S. 510, 527 (2003), and even if counsel does not testify. Cf. *Buck*, 580 U. S., at ___ (slip op., at 17) ("No competent defense attorney would introduce such evidence about his own client"). "'In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Hinton* v. *Alabama*, 571 U. S. 263, 273 (2014) (*per curiam*). This Court simply cannot escape the fact that the state court failed to conduct the necessary inquiry.

\*    \*    \*

Today's decision continues a troubling trend in which this Court strains to reverse summarily any grants of relief to those facing execution. See, *e.g.*, *United States* v. *Higgs*, 592

U. S. \_\_\_ (2021) (emergency vacatur of stay and reversal); *Shinn* v. *Kayer*, 592 U. S. \_\_\_ (2020) (*per curiam*) (summary vacatur); *Dunn* v. *Ray*, 586 U. S. \_\_\_ (2019) (emergency vacatur of stay). This Court has shown no such interest in cases in which defendants seek relief based on compelling showings that their constitutional rights were violated. See, *e.g.*, *Johnson* v. *Precythe*, 593 U. S. \_\_\_ (2021) (denying certiorari); *Whatley* v. *Warden*, 593 U. S. \_\_\_ (2021) (same); *Bernard* v. *United States*, 592 U. S. \_\_\_ (2020) (same). In Reeves' case, this Court stops the lower court from granting Reeves' petition by adopting an utterly implausible reading of the state court's decision. In essence, the Court turns "deference," *ante*, at 7, into a rule that federal habeas relief is never available to those facing execution. I respectfully dissent.