# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                        )
     v.               )     Crim. ID No. 2307016193
                        )
DOMINIQUE HARPER,     )

Submitted: December 15, 2025
Decided: March 16, 2026

*Upon Defendant Dominique Harper's*
*Motion for Postconviction Relief,*
DENIED**.**

## MEMORANDUM OPINION AND ORDER

Brianna Mills, Esquire, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, *Attorney for the State of Delaware.*

Dominique Harper, *Self Represented*

**LUGG, J.**

Dominique Harper has filed a motion seeking postconviction relief. Despite pleading guilty, he challenges the performance of his attorney's representation at various stages of his case. The Court has reviewed Harper's motion,[1] the affidavit of counsel,[2] the State's response,[3] and the record in this case.[4] Harper's motion for postconviction relief is denied.

### FACTUAL BACKGROUND[5]

On Thursday July 27, 2023, Officer Gliem of the Wilmington Police Department responded to an after-the-fact report of a domestic violence event alleged to have occurred on July 22, 2023. The victim of this event informed Officer Gliem that, on July 20, 2023, she ended her relationship with her then-boyfriend, Dominique Harper and asked Harper to cease communicating with her. Within days, Harper ignored her request.

---

[1] D.I 21 (Def. Mot.).

[2] D.I 27 (Trial Counsel Aff.).

[3] D.I 29 (State Resp.).

[4] The Court's June 26, 2025, scheduling order provided Harper the opportunity to file a memorandum of law in support of his postconviction motion by September 30, 2025, and to reply to the State's response within 45 days of the docketing of the State's response. D.I. 28. Harper filed neither. Because Harper's reply was due within 45 days of the filing of the State's response, or December 15, 2025, the Court considers this matter under submission as of that date.

[5] D.I. 1. Because Harper pled guilty, the Court draws the facts from the affidavit of probable cause supporting the warrant for his arrest.

The victim told Officer Gliem that, on July 22, 2023, Harper keyed in the code to unlock the front door of her residence, entered without her permission, and confronted her in the living room. A verbal altercation quickly devolved to physical violence. Harper spit on the victim then punched her with sufficient force to knock her to the ground. Harper continued battering the victim while she was on the ground, then began to choke her. After extricating herself from this attack, the victim sought medical attention at the Saint Francis Hospital.

While speaking with the victim five days after the attack, Officer Gliem observed red marks on her neck and noted that she had difficulty making a fist due to injuries to her left hand. The victim also provided Officer Gliem photographs of her injuries and video surveillance from within her residence "that captured the entire incident." Officers arrested Harper on August 5, 2023.

## PROCEDURAL BACKGROUND

On November 20, 2023, a New Castle County grand jury returned an indictment charging Harper with Burglary First Degree, Strangulation, Assault Second Degree, and Offensive Touching.[6] On June 13, 2024, Harper pled guilty to Criminal Trespass First Degree (an included offense of Burglary First Degree), Strangulation, and Assault Third Degree (an included offense of Assault Second

---

[6] D.I. 4.

3

Degree).[7] Under the plea, the State "agree[d] to cap its recommendation for unsuspended level V time at 18 months," and "agree[d] not to declare the Defendant a habitual offender."[8] At the parties joint request, the Court ordered a presentence investigation.

On September 6, 2024, the Court sentenced Harper to an aggregate term of 10 years at supervision level 5, suspended after 2 years for level 4 placement at the discretion of the Department of Correction, suspended after successful completion of the designated level 4 program for 2 years of community supervision at level 3.[9] On November 12, 2024, Harper filed a "Motion for Modification of Sentence"[10] which the Court denied on December 13, 2024.[11]

On March 20, 2025, acting *pro se*, Harper filed a "Motion for Postconviction Relief"[12] and a "Motion for Appointment of Counsel."[13] On April 11, 2025, the Court denied Harper's request for appointment of counsel and ordered an expansion of the record under Superior Court Criminal Rule 61(g) to include an affidavit from

---

[7] D.I. 13 ("Plea Agreement" and "Truth-in-Sentencing ("TIS") Guilty Plea Form").

[8] Plea Agreement.

[9] D.I. 17.

[10] D.I. 19.

[11] D.I. 20.

[12] D.I. 21.

[13] D.I. 22.

Trial Counsel addressing Harper's claims.[14] On June 6, 2024, Trial Counsel provided her affidavit.[15] The Court then entered a scheduling order permitting Harper to file a "Memorandum of Law in support of his postconviction motion by September 30, 2025," directing the State to "file its response and supporting materials on or before November 1, 2025," and allowing Harper to "file any reply to the State's response within 45 days of the docketing of the State's response."[16] Harper did not file a memorandum of law, and the State responded to his original motion on October 31, 2025.[17] Harper did not reply.

In his motion, Harper asserts three claims of ineffective assistance of counsel. First, he contends Trial Counsel "failed to consider the facts of the case and defendant's version of what happened, resulting in counsel failing to develop an appropriate defense strategy for trial."[18] Second, he argues Trial Counsel "advocated for defendant's entry into a plea agreement that was not in defendant's best

---

[14] D.I. 26.

[15] D.I. 27. ("Affidavit of Trial Counsel").

[16] D.I. 28.

[17] D.I. 29 ("State's Resp").

[18] Def. Mot. at 4.

interest."[19]   And, third, he posits Trial Counsel "failed to object" to a photograph offered by the State at sentencing depicting the victim's injuries.[20]

## ANALYSIS

"Superior Court Criminal Rule 61 provides the exclusive remedy for setting aside final judgment of conviction."[21]   Rule 61 is "intended to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[22]   Rule 61 provides incarcerated individuals a procedure to seek to have a conviction set aside on the ground that the Court lacked jurisdiction or to collaterally attack their conviction.[23]   When evaluating a Rule 61 Motion, the Court "first must consider the procedural requirements of the rule before addressing any substantive issues."[24]   The rule prohibits the Court from considering a motion that is: (1) untimely (filed more than one year after the judgment of conviction is final);[25]

---

[19] *Id.*

[20] *Id.* at 4-5.

[21] *Jackson v. State*, 2007 WL 2231072, at *1 (Del. Aug. 2, 2007).

[22] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

[23] Super. Ct. Crim R. 61(a)(1).

[24] *Maxion v. State* 686 A.2.d 148, 150 (Del. 1996) (citing *Younger v. State*, 580 A.2d 552, 554 (Del. 1990)).

[25] Super Ct. Crim R. 61(i)(1).

(2) repetitive;[26] (3) procedurally defaulted;[27] or (4) formerly adjudicated.[28] "Absent extraordinary circumstances, an ineffective-assistance-of-counsel claim cannot be asserted in the proceedings leading to a judgment of conviction."[29] Harper's motion is timely, and none of Rule 61's procedural bars preclude consideration for his ineffective assistance of counsel claims.

### *Ineffective Assistance of Counsel*

To succeed on an ineffective assistance of counsel claim, Harper must meet the two-prong test established by the United States Supreme Court in *Strickland v. Washington*.[30] Under *Strickland*, a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness;"[31] and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[32] A reasonable probability is a probability sufficient to undermine the confidence in the outcome."[33]

---

[26] Super Ct. Crim R. 61(i)(2).

[27] Super Ct. Crim R. 61(i)(3).

[28] Super Ct. Crim R. 61(i)(4).

[29] *Kellam v. State*, 341 A.3d 475, 489 (Del. 2025).

[30] *Strickland v. Washington* 466 U.S. 668, 687 (1984).

[31] *Id.* at 688.

[32] *Id.* at 694.

[33] *Id.*

7

The Court may dispose of an ineffective assistance of counsel claim if the defendant fails to show a reasonable probability of a different result but for the counsel's alleged errors.[34] "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."[35] A defendant must allege prejudice and then substantiate that allegation.[36] Because a defendant must prove both parts of an ineffective assistance of counsel claim, a failure to establish sufficient prejudice alone is enough to defeat an ineffective assistance of counsel allegation. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"[37] The "court must consider the 'totality of the evidence,' and 'must ask if the [movant] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.'"[38]

An ineffective assistance of counsel claim is a question of whether trial counsel's actions were adequate.[39] A review of counsel's representation is subject

---

[34] *Id.* at 697.

[35] *Id.* at 693.

[36] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[37] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).

[38] *State v. Reyes*, 155 A.3d 331, 343 (Del. 2017) (citing *Swan v. State*, 28 A.3d 362, 384 (Del. 2011) (quoting *Strickland*, 466 U.S. at 695-96)).

[39] *State v. Wright*, 2023 WL 2128338, at *3 (Del. Super. Ct. Feb. 21, 2023).

to a strong presumption that counsel's conduct was professionally reasonable.[40] As such, mere allegations will not suffice; instead, a defendant must make concrete allegations of ineffective assistance, and then substantiate them, or risk summary dismissal.[41] And, "a defendant who enters a knowing, intelligent, and voluntary guilty plea waives his right to challenge errors occurring before the entry of the plea."[42]

### Harper's Ineffective Assistance of Counsel Claims

### 1. Trial Counsel considered and investigated Harper's version of the events.

Harper alleges his Trial Counsel was ineffective for failing "to consider the facts of the case and defendant's version of what happened, resulting in counsel failing to develop an appropriate defense strategy for trial."[43] Further, Harper argues, Trial Counsel "failed to obtain the available video footage of the alleged incident, which would have corroborated defendant's version of the facts", causing "defendant to plead guilty."[44]

---

[40] *Id.*

[41] *Younger v. State*, 580 A.2d 553, 556 (Del. 1990).

[42] *Dollard v. State*, 2020 WL 2393353, at *2 (Del. May 11, 2020) (citing *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003)).

[43] Def. Mot. at 4.

[44] *Id.*

Trial Counsel denies Harper's allegations. The evidence against Harper was clear and overwhelming. As Trial Counsel explains:

> Surveillance [video] within the victim's home captured the incident in two different clips. The video shows the victim backed against a television in her home as she argues with Mr. Harper. Mr. Harper strikes the victim about her head/upper torso area causing her to fall to the ground. The victim sits up, appearing to be slightly stunned, but does not get up off the floor. Mr. Harper shoves the victim down onto her back and the attack resumes. Mr. Harper is on video, grabbing her neck area and striking her head area while the victim rolls around and struggles on the floor. Mr. Harper sits on top of the victim, with his back towards the camera, and appears to be grabbing her head/neck area and appears to strike her repeatedly. He stands up, the victim rolls over holding her face.[45]

Trial Counsel discussed the evidence and received Harper's version of events, including his belief that the victim exaggerated her injuries and engaged in unprofessional conduct with her clients.[46] Trial Counsel then investigated Harper's allegations but found them to be unsupported and, to the extent the victim's credibility could be called into question, "[v]ideo evidence shows that the incident occurred, and medical records document her injuries" leaving "no basis for defense to argue that the victim fabricated the incident solely to retaliate against Mr. Harper."[47] Trial Counsel presented the results of her investigation to the State, and

---

[45] Trial Counsel Aff. at 2.

[46] *Id.*

[47] *Id.* at 3.

"the State offered a reduced plea."[48] The decision to accept or reject the plea was made by Mr. Harper."[49]

Trial Counsel's performance was objectively reasonable; she thoroughly investigated each of Harper's claims in the context of Harper's version of the facts. But, of course, the video evidence was overwhelming. At the conclusion of Trial Counsel's investigation, Harper knowingly, voluntarily, and intelligently chose to accept the State's plea offer.[50] "*Strickland* does not require counsel to pursue every line of investigation or require counsel to leave no stone unturned and no witness unpursued."[51] "The duty to investigate requires only that investigatory decisions be reasonable."[52] The Delaware Supreme Court has reasoned that "defense lawyers have 'limited' time and resources', and they must choose among 'countless' strategic options."[53] While, as a general matter, "defense counsel [is] under no obligation to exhaust every line of investigation,"[54] Trial Counsel investigated Harper's claims

---

[48] Trial Counsel Aff. at 4.

[49] *Id.*

[50] D.I. 13

[51] *Cooke v. State* 338 A.3d 418, 469 (Del. Super. 2023).

[52] *Id.*

[53] *Id.* (citing *Dunn v. Reeves*, 594 U.S. 731, 739, 141 S. Ct. (2021)) (quoting *Harrington v. Richter*, 562 U.S. 86, 106-107, 131 S. Ct. (2011)).

[54] *Id.*

and provided him information allowing him to understand the weight of the evidence against him.

Harper pled guilty. During his colloquy, he informed the Court that he was "satisfied with [his] lawyer's representation of [him], and that [his] lawyer [had] fully advised [him] of [his] rights."[55] By pleading guilty, Harper waived any alleged errors occurring before the entry of his plea.[56] And, in any event, he has failed to demonstrate deficient performance or prejudice on the part of Trial Counsel.

### 2. *Trial Counsel did not force Harper to plead guilty.*

Harper alleges Trial Counsel "advocated for defendant's entry into a plea agreement that was not in defendant's best interest," and asserts that "[t]he evidence would have been sufficient to create reasonable doubt at trial, exonerating defendant of all charges."[57] Trial Counsel denies this claim.

Trial Counsel explained that she "did not advocate for Harper to accept or reject the plea."[58] Rather, she "met with Mr. Harper, in person, after investigating his version of the events, and explained to Mr. Harper the evidence in [the] case and the impact of his version of events, specifically that he provided nothing that

---

[55] TIS Guilty Plea Form.

[56] *Dollard*, 2020 WL 2393353, at *2 (citing *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003)).

[57] Def. Mot at 3.

[58] Trial Counsel Aff. at 5.

overcame the video evidence or that presented a viable legal defense."[59] Trial Counsel also explained that "Harper was a four-time convicted felon, making him eligible for sentencing under the habitual offender statute."[60] Nonetheless, Trial Counsel convinced the State to not pursue habitual offender sentencing of Harper, and to reduce or drop several charges pending against Harper.[61] Harper informed the Court at his plea colloquy that he "freely and voluntarily decided to plead guilty to the charges listed on [his] written plea agreement," that he had not "been promised anything that is not stated in [his] written plea agreement," and that neither Trial Counsel, "the State, or anyone threatened or forced [him] to enter this plea."[62]

Harper fails to offer any evidence supporting his claim. "[I]n the absence of clear and convincing evidence to the contrary, [a defendant] is bound by the statements he made during his plea colloquy."[63] "[A] defendant's decision to plead guilty as a means to avoid additional prison time does not amount to 'coercion.'"[64] Trial Counsel and the prosecutor truthfully telling the defendant he could receive

---

[59] Trial Counsel Aff. at 5.

[60] *Id*.

[61] *Id.*

[62] TIS Guilty Plea Form.

[63] *State v. Edwards*, 2007 WL 4374237, at *1 (Del. Dec. 17, 2007) (citing *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997).

[64] *Edwards*, 2007 WL 4374237, at *1 (citing *Brady v. United States*, 397 U.S. 742, 751-52 (1970)).

more incarceration if convicted of the indicted charges does not amount to coercion.[65]  Harper's second claim fails.

### 3. Trial Counsel's decision not to object to evidence was professionally reasonable.

Harper alleges Trial Counsel "provided IAC to [him] because counsel permitted the prosecutor to give the Court a photo of [the] alleged victim that depicted said victim with contusions around both of her eyes," injuries Harper contends he did not cause.[66]  Trial Counsel responds that she "did not have a legal basis to object to the evidence offered by the prosecutor at the time of the sentencing."[67]

"Judicial scrutiny of counsel's performance is highly deferential."[68]  "Courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance," and the burden falls upon the defendant to rebut this "strong presumption."[69]  A sentencing court has broad discretion in considering information to determine an appropriate sentence.[70]  "However, a sentencing court abuses its discretion if it sentences on the basis of inaccurate or unreliable

---

[65] *State v Starr*, 2014 WL 6673914, at *5 (Del. Super. Ct. Oct. 29, 2014).

[66] Def. Mot. at 5.

[67] Trial Counsel Aff. at 6.

[68] *Cooke v. State,* 338 A.3d 418, 455 (Del. 2025).

[69] *Id.*

[70] *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992).

information."[71]  Material offered for the Court's consideration must bear "some minimal indicum of reliability beyond mere allegation."[72]

Here, Harper pled guilty, and, at sentencing, the State offered a photograph purporting to depict the victim's injury.[73]  The photograph bore a minimal indicum of reliability and directly touched on an issue pertinent to Harper's sentence – the injury he inflicted to his victim.  Trial Counsel reasonably concluded that she lacked a legal basis to object.  Her assessment was professionally reasonable.  And, in any event, Harper suffered no prejudice because the facts and circumstances of Harper's assault, in the absence of photographic evidence, supported the sentence imposed.

## CONCLUSION

Trial Counsel provided Harper effective assistance of counsel.  Trial Counsel investigated Harper's claims and found them to lack merit.  And, video evidence captured Harper's attack upon the victim.  Trial Counsel informed Harper of the results of her investigation.  So informed, Harper knowingly, intentionally, and voluntarily accepted the State's reduced plea offer.  In response to the Court's questioning, Harper expressed his satisfaction with Trial Counsel's representation and confirmed that he was neither forced nor threatened to enter the plea.  Then, at

---

[71] *Id.* at 843.

[72] *Id.*

[73] D.I. 21 at 3.

sentencing, Trial Counsel properly refrained from objecting to photographic evidence proffered by the State depicting the results of Harper's attack. For the reasons set forth herein, Harper's Motion for Postconviction Relief is **DENIED**.

_____
Sean P. Lugg, Judge

Original to Prothonotary

cc:    Dominique Harper, *pro se*
       Ashley M. Callaway, Esq., Office of Defense Services
       Brianna Mills, Esq., Deputy Attorney General