FILED

12/23/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0646

DA 23-0646

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 295

MARK KAPPS,

Petitioner and Appellant,

v.

STATE OF MONTANA,

Respondent and Appellee.

APPEAL FROM:   District Court of the Sixteenth Judicial District,
In and For the County of Fallon, Cause No. DV-2022-20
Honorable Nickolas C. Murnion, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Nicholas T. Hine, Hine Law PLLC, Brooklyn, New York

For Appellee:

Austin Knudsen, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Helena, Montana

Darcy Wassmann, Fallon County Attorney, Thorin Geist, Special
Deputy County Attorney, Baker, Montana

Submitted on Briefs:  October 8, 2025

Decided:  December 23, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Mark Kapps appeals from the order of the District Court for the Sixteenth Judicial District, Fallon County, denying his petition for postconviction relief which was premised on claims of ineffective assistance of counsel. While the District Court denied Kapps's claims on procedural grounds, as well as on the merits, the State acknowledges on appeal that Kapps's claims are not procedurally barred. Thus, we restate the issue on appeal as follows:

> *Whether the District Court erred in denying Kapps's petition for postconviction relief on the merits.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 On August 3, 2014, Kapps drove his fiancé, Miranda Thomas (Miranda), to work at the Sagebrush Inn in Baker, Montana. Miranda worked with her sister, Stephanie Craig (Stephanie), who managed the inn and lived on site in a home attached to the inn's lobby, along with her husband and three children, M.C., C.C., and Z.C. While Miranda worked, Kapps and his infant son spent the day at the Craig home, which they often did on weekends when Miranda was working.

¶3 On August 4, 2014, Stephanie contacted the Baker Police Department and reported that M.C. had been molested by Kapps. According to Stephanie, M.C. had told C.C. that Kapps put his hand down her pants while he had been over at the house the day before. C.C. had then told Miranda, who then told Stephanie. The Baker Police Department conducted interviews with M.C., C.C., and Stephanie, gathered evidence from the Craig home, and arranged for a SANE exam to be conducted on M.C. Officer Paul Sutter and

Officer Justin LaCroix interviewed Kapps. Several days later, Stephanie called the Baker Police Department requesting they retrieve a stained Toy Story blanket that M.C. had identified as something Kapps had used to cover them while he touched her. On December 31, 2014, the State Crime Lab issued a Serology/DNA Report concluding that the major DNA profile from the stained blanket matched DNA provided by Kapps.

¶4 On March 27, 2015, the State charged Kapps by Information with sexual assault, in violation of § 45-5-502, MCA, and sexual intercourse without consent, in violation of § 45-5-503, MCA. The State alleged that Kapps molested his fiancée's seven-year-old niece, M.C. Kapps retained David S. Freedman as counsel and pled not guilty to the charges.

¶5 A four-day trial commenced on February 9, 2016, during which the State called M.C. and various family members to testify, as well as law enforcement officers and crime lab employees. Officer Sutter testified to his involvement in the department's investigation of Kapps and explained that he took photos of evidence at the Craig home and conducted the initial interview of Kapps. The State presented a video recording of Sutter's interview with Kapps to the jury. Throughout the interview Kapps was adamant that he did not touch M.C. and Sutter repeatedly made statements to Kapps regarding his guilt. The video shows Sutter specifically stating, "we pretty much have the picture drawn," "we've heard [M.C.'s] story and we believe it," "7-year-olds don't make up stories," "we know who did it," and "be a man, take responsibility."

¶6 On cross-examination, Freedman asked Sutter a series of questions about why he had believed Kapps was guilty at the time of the interview. Sutter testified that he

3

considered Kapps guilty approximately 13 minutes into the interview, after Kapps stated that he didn't watch or touch M.C. as she got dressed. Sutter explained that he considered this statement by Kapps to be a "submind confession" and that another "red flag" had been when Kapps listed all the names of his family members and their kids prior to stating M.C.'s name. When Freedman asked questions about Kapps's willingness to cooperate with law enforcement, Sutter stated that while Kapps was willing to talk to them, the interview "didn't have a flow of honesty to it," and that Kapps was "acting" when he appeared to break down and cry at the end. Freedman also asked Sutter a series of questions regarding his training and whether drawing a conclusion about Kapps's guilt so early in the investigation was contrary to it. Sutter responded that when "they take [the child's] word as truthful and you add all the things together uh, if there's no evidence to point you elsewhere then uh, guilt is guilt." Freedman went on to ask Sutter if, based on his training, he was surprised Kapps refused to provide a DNA sample without a court order, to which Sutter stated, "If you['re] innocent you['re] gonna have to prove your innocence and if that's what you can do to prove your innocence."

¶7 Freedman also followed up with Sutter about a statement he had made about seven-year-olds not making up stories. In response, Sutter testified, "7 year olds don't make uh, if they tell a story they don't have details and being as detailed as the—of what we were told isn't a 7 year old—something a 7 year old would have been exposed to." Freedman followed up by asking Sutter whether he believed M.C.'s statements at the time of the interview or whether he was using them to try to elicit an admission from Kapps. In response, Sutter testified that "we believed M.C. to be truthful."

4

¶8 In his closing argument, Freedman stated to the jury,

> [Sutter's] mind was made up right off the bat. And even with that prism, everything from his questioning to the way he handled the investigation was from the presumption of guilt. Not to find out what happened. And I submit to you that that clouded his investigation and he was . . . the most senior officer so he was going to be the one that was going to provide information because of his prior dealings with cases involving children and the fact that he was the most experienced person involved in the investigation and I argue to you that that—that clouded his—his judgment.

¶9 The jury found Kapps guilty on both counts. Kapps filed a direct appeal to this Court raising several issues, including ineffective assistance of counsel. This Court affirmed Kapps's conviction and sentence on August 22, 2017. *State v. Kapps*, No. DA 16-0513, 2017 MT 207N, 2017 Mont. LEXIS 537. On August 22, 2018, Kapps filed a petition for postconviction relief.

¶10 On June 18, 2019, while Kapps's petition for postconviction relief was pending, this Court disbarred Freedman from the practice of law following a series of disciplinary actions. *See In re Freedman*, No. PR 16-0239, Order (Mont. Dec. 6, 2016) (ordering Freedman be publicly censured for admittedly violating the Rules of Professional Conduct, including M. R. Pro. Cond. 1.1, 1.3, 1.4, 1.16(d), and 3.4(d)); *In re Freedman*, No. PR 18-0034, Order (Mont. Oct. 30, 2018) (ordering Freedman be suspended from the practice of law for seven months following his failure to file a timely appeal at the request of his client and his failure to appear at a hearing on his client's motion); *In re Freedman*, No. PR 18-0516, Order (Mont. June 18, 2019) (ordering Freedman be disbarred following a complaint by a client which Freedman subsequently failed to respond to, leaving the Commission on Practice unable to opine as to the reasons for his conduct).

¶11 On August 2, 2021, Kapps filed an amended petition for postconviction relief, arguing that Freedman rendered ineffective assistance of counsel by failing to effectively cross-examine M.C. and challenge her competency as a witness. Additionally, Kapps argued that Freedman rendered ineffective assistance of counsel in his cross-examination of Sutter. Kapps asserted that Freedman elicited improper and damaging testimony from Sutter by repeatedly asking Sutter to comment on the credibility of both M.C. and Kapps.

¶12 The District Court ordered the State to respond to Kapps's petition and scheduled an evidentiary hearing. After the petition was fully briefed, the District Court issued both a subpoena ordering Freedman to attend the evidentiary hearing, and a *Gillham* order[1] directing Freedman to respond to the allegations set forth in Kapps's petition. However, Freedman avoided service of the subpoena, failed to respond to the District Court's order, and failed to attend the evidentiary hearing, which took place on June 13, 2023.

¶13 On September 22, 2023, the District Court issued its order denying Kapps postconviction relief, concluding that Kapps's claims were procedurally barred. The District Court also denied Kapps's claims on the merits. Kapps appeals, asserting that the District Court erred in denying his claims of ineffective assistance of counsel regarding

---

[1] *In re Gillham*, 216 Mont. 279, 704 P.2d 1019 (1985). A *Gillham* order is court authorization for defense counsel to respond to a defendant's allegations of ineffective assistance of counsel, allowing counsel to disclose otherwise privileged attorney-client communications, as necessary for the court to "ascertain the truth of such allegations." An attorney ordered to respond pursuant to a *Gillham* order is immune from disciplinary proceedings and charges of malpractice related to the information, documents, and testimony necessarily provided in response. *See Marble v. State*, 2007 MT 98, ¶ 4, 337 Mont. 99, 169 P.3d 1148.

Freedman's cross-examination of Sutter. The State concedes that Kapps's claim is not procedurally barred.

## STANDARD OF REVIEW

¶14 We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous, and whether its conclusions of law are correct. *Stock v. State*, 2014 MT 46, ¶ 9, 374 Mont. 80, 318 P.3d 1053. Claims of ineffective assistance of counsel are mixed questions of law and fact that are reviewed de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861.

## DISCUSSION

¶15 *Whether the District Court erred in denying Kapps's petition for postconviction relief on the merits.*

¶16 Criminal defendants are guaranteed the right to effective counsel under both the United States Constitution and the Montana Constitution. U.S. Const. amend. VI; Mont. Const. art. II, § 24. This Court reviews claims of ineffective assistance of counsel by applying the two-prong test articulated by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052 (1984). *State v. Racz*, 2007 MT 244, ¶ 22, 339 Mont. 218, 168 P.3d 684. Under *Strickland*, a defendant must demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense such that the defendant was deprived of a fair trial. *Racz*, ¶ 22. To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy both prongs; "if an insufficient showing is made regarding one prong of the test, there is no need to address the other prong." *Whitlow*, ¶ 11 (citation omitted).

7

¶17    Kapps's claims of ineffective assistance of counsel are premised entirely on Freedman's cross-examination of Sutter.  Kapps asserts that Freedman elicited testimony regarding Sutter's opinions as to the credibility of both Kapps and M.C. and that such testimony was not only improper and indicative of plain error, but also severely damaging to Kapps's credibility as a witness.  According to Kapps, Freedman's cross-examination of Sutter called into question the fundamental fairness of the trial and was both deficient and prejudicial, satisfying both prongs of *Strickland*.

¶18    To establish deficient performance as required under *Strickland*'s first prong, it must be shown that counsel's representation "fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20.  The errors of counsel must be so serious that counsel ultimately failed to function as the "counsel" guaranteed to the defendant by the Sixth Amendment.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  However, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.  A defendant claiming ineffective assistance of counsel bears a heavy burden in overcoming the presumption that the challenged action might have been a product of sound trial strategy under the circumstances.  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Whitlow*, ¶ 21.  "It should go without saying that the absence of evidence cannot overcome [it]." *Burt v. Titlow*, 571 U.S. 12, 23, 134 S. Ct. 10, 17 (2013) (citations omitted).

¶19    In considering whether counsel's performance was deficient, "every effort must be made to 'eliminate the distorting effects of hindsight, to reconstruct the circumstances of

8

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Whitlow*, ¶ 15 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065). Tactical decisions that are objectively reasonable should not be second guessed. *See Whitlow*, ¶ 19. "In fact, even if there is reason to think that counsel's conduct was far from exemplary, a court still may not grant relief if the record does not reveal that counsel took an approach that no competent lawyer would have chosen." *Dunn v. Reeves*, 594 U.S. 731, 739, 141 S. Ct. 2405, 2410 (2021) (citations omitted).

¶20 Relying on our decision in *State v. Hayden*, 2008 MT 274, 345 Mont. 252, 190 P.3d 1091, Kapps argues that it was not objectively reasonable for Freedman—as defense counsel—to repeatedly ask Sutter—the State's witness—for his opinion on the credibility of Kapps and M.C. Kapps's reliance on *Hayden*, however, is unpersuasive.

¶21 In *Hayden*, we held that a defendant's constitutional right to a fair trial was undermined by plain error committed by the prosecution. *Hayden*, ¶ 34. At trial, during the prosecution's case-in-chief, two witnesses recanted statements they had provided to detectives in earlier interviews. *Hayden*, ¶ 9. On rebuttal, the prosecutor called the detective who had initially interviewed the two witnesses and asked whether the detective believed the statements provided during their earlier interviews were true, and which statements—the interview statements or the in-court testimony—were more believable. *Hayden*, ¶ 12. The detective testified that he believed the interview statements to be true. *Hayden*, ¶ 12. Additionally, the prosecutor went on to tell the jury during their closing argument that the detective was "believable" and that the jury could "rely on" their testimony. *Hayden*, ¶ 14. The prosecutor also stated that he knew the detectives in the

9

case did "good work" and that he also knew that the evidence the detectives had seized was in fact related to the charges. *Hayden*, ¶ 14. Invoking plain error review, we held that the prosecutor's conduct—their comments during closing argument and their elicitation of improper testimony—invaded the province of the jury such that the fundamental fairness of the trial was called into question. *Hayden*, ¶¶ 30-33.

¶22 Kapps asserts that Freedman's conduct reflects that of the prosecutor in *Hayden*, and because such conduct constitutes plain error when committed by a prosecutor, it stands to reason that such conduct falls below the objectively reasonable standard when committed by a defense attorney. However, the plain error committed in *Hayden* was not simply the product of the improper testimony elicited by the prosecutor, it was the result of the cumulative effect of multiple instances of prosecutorial misconduct which ultimately called into question the fundamental fairness of the proceedings. *Hayden*, ¶¶ 31-33; *see State v. Aker*, 2013 MT 253, ¶ 28, 371 Mont. 491, 310 P.3d 506. Further, unlike the prosecutor in *Hayden*, Freedman did not ask Sutter to provide his opinion regarding the veracity of statements made by Kapps or M.C. at trial. Rather, Sutter was asked only about his beliefs regarding Kapps and M.C. at the time of the interview.

¶23 As Kapps acknowledges, the outcome of the case depended on whether the jury believed Kapps's version of events over M.C.'s. Rather than attack the victim—a child—Freedman attacked the investigation. Throughout trial, Freedman highlighted inconsistencies in witness statements and evidence, and he questioned law enforcement's procedures and the detectives' tunnel vision when it came to Kapps being the perpetrator. It was clear from the video of Kapps's interview, which was played for the jury prior to

10

Freedman's cross-examination of Sutter, that Sutter believed Kapps was guilty. Freedman merely addressed the statements Sutter made and the hasty conclusions Sutter appeared to reach throughout the interview to demonstrate that Sutter's perception of guilt was based on a rushed judgment and not the evidence at hand. After establishing that Sutter had concluded Kapps's guilt only 13 minutes into the interview, Freedman pressed Sutter on whether drawing such a conclusion so early in an investigation was consistent with his training. Sutter responded to Freedman's line of questioning with several statements suggesting that Sutter's perception of guilt was generally inconsistent with the presumption of innocence. Such statements include, "if there's no evidence to point you elsewhere then uh, guilt is guilt," and "[i]f you['re] innocent you['re] gonna have to prove your innocence."

¶24 Freedman's cross-examination was sound trial strategy under the circumstances. The jury was already aware from the interview that Sutter believed Kapps to be guilty. Freedman's cross-examination was designed to raise doubts about the basis for that belief. To be sure, Freedman used the testimony elicited from Sutter in his closing argument to assert that Sutter's preconceptions of guilt "clouded his judgment" and ultimately led to an inadequate investigation, undermining the State's conclusion that Kapps was the perpetrator of the crime. While Kapps asserts that Freedman completely eschewed the defense attorney standard of asking leading questions during cross-examination, he has failed to offer any legal authority or expert testimony concerning the prevailing professional norms applicable to Freedman's conduct. And although we cannot say that Freedman's performance was exemplary, the record has not revealed that Freedman took

11

an approach that no competent lawyer would have. Accordingly, Kapps has failed to overcome the presumption that Freedman's conduct was based on sound trial strategy and within the wide range of reasonable professional assistance.

¶25 Nonetheless, Kapps argues that under the unique circumstances of this case, we should find that Freedman's disbarment and his absence from the proceedings weigh in favor of finding deficient performance. Relying on our decision in *Heath v. State*, 2009 MT 7, 348 Mont. 361, 202 P.3d 118, Kapps argues that it would be unfair and unjust to fault Kapps for Freedman's unwillingness to respond to Kapps's allegations. Kapps's reliance on *Heath*, however, is misplaced.

¶26 In *Heath*, we considered whether a district court erred by denying a petition for postconviction relief without an evidentiary hearing. *Heath*, ¶ 3. The petition at issue set forth numerous claims of ineffective assistance of counsel, but the record failed to set forth counsel's reasoning regarding their pre-trial actions and decisions at trial. *Heath*, ¶ 8. Accordingly, the district court ordered counsel to respond to the petitioner's claims, recognizing that a response was necessary for resolution. *Heath*, ¶ 8. However, counsel died prior to filing any response. *Heath*, ¶ 8. The petitioner requested an evidentiary hearing, but the district court denied the request, concluding that a hearing would not be beneficial due to the unavailability of counsel. *Heath*, ¶ 20. On appeal, we recognized that the untimely death of counsel presented a "unique circumstance" which "should not result in an insurmountable barrier to [a petitioner's] attempt to obtain the information necessary to meet [their] *Strickland* burden." *Heath*, ¶ 24. We reversed and remanded, holding that the district court abused its discretion in denying the petition absent a hearing because the

12

petitioner was ultimately denied any alternative means of inquiry into counsel's reasoning. *Heath*, ¶ 24.

¶27 Here, the circumstances surrounding Freedman's unavailability have not resulted in any insurmountable barrier to relief. Unlike the petitioner in *Heath*, Kapps was afforded an evidentiary hearing. While Freedman's unavailability and disbarment may constitute unique circumstances warranting an evidentiary hearing, a petitioner is not entitled to postconviction relief simply because trial counsel failed to respond to their allegations of ineffective assistance of counsel. Nor does an attorney's failure to others establish per se deficient performance. Absent a link between Freedman's performance in this action and his violations of professional conduct in other non-related matters, Freedman's subsequent deficiencies fail to support a finding of ineffective assistance of counsel in regards to Kapps's trial.

¶28 Accordingly, Freedman's performance was not deficient under *Strickland*, and the District Court did not err in denying Kapps's petition for postconviction relief. While Freedman's performance was far from exemplary, it is entitled to the presumption of sound trial strategy. An evidentiary hearing was conducted, providing Kapps an opportunity to develop his claims and present non-record evidence. Freedman's failure to participate in postconviction relief proceedings does not automatically render his performance at trial deficient, nor does his subsequent disbarment.

¶29 In any event, Freedman fails to satisfy the second prong of *Strickland*, which requires a defendant to show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Heath*, ¶ 14 (citing

13

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶30 Here, as discussed above, the jury had watched Sutter's interview of Kapps prior to Freedman's cross-examination, in which Sutter repeatedly stated to Kapps that he knew Kapps did something to M.C. and that seven-year-olds do not make up these kinds of allegations. The jury could reasonably conclude from the interview that Sutter believed Kapps was guilty and M.C. to be truthful, regardless of Freedman's cross-examination. Further, M.C.'s allegations were corroborated by DNA evidence. Kapps's semen was found on the Toy Story blanket that M.C. said Kapps used to cover them both while he sexually abused her. Joseph Pasternak of the Montana State Crime Lab testified that the major profile of DNA found on the blanket matched that provided by Kapps and that the same major profile would be found in only 1 in every 21.9 quintillion Caucasians. Given the strength of this evidence, there is not a reasonable probability that Freedman's cross-examination of Sutter affected the outcome of the case. Accordingly, Kapps has failed to establish that he was prejudiced by Freedman's allegedly deficient performance.

## CONCLUSION

¶31 In sum, Kapps has failed to establish ineffective assistance of counsel under *Strickland*. Not only has Kapps failed to overcome the presumption that Freedman's cross-examination fell within a wide range of reasonable professional assistance, as required under *Strickland*'s first prong, but Kapps also failed to establish that he was

14

prejudiced by such conduct, as required under *Strickland*'s second prong. Consequently, the District Court did not err in denying Kapps's petition for postconviction relief.

¶32 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE